UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/2023

| | |
|---|---|
| GULF ISLAND SHIPYARDS, LLC,<br><br>    Plaintiff,<br><br>  -against-<br><br>MEDITERRANEAN SHIPPING COMPANY (USA), INC., as agent for MSC MEDITERRANEAN SHIPPING CO. S.A., GENEVA, MARTIN BENCHER USA, LLC, and MARTIN BENCHER (SCANDINAVIA) A/S<br><br>    Defendants. | 1:22-cv-01018 (MKV)<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| MSC MEDITERRANEAN SHIPPING CO. S.A.,<br><br>    Counter-Plaintiff,<br><br>  -against-<br><br>GULF ISLAND SHIPYARDS, LLC,<br><br>    Counter-Defendant. | |
| MSC MEDITERRANEAN SHIPPING CO. S.A.,<br><br>    Cross-Plaintiff,<br><br>  -against-<br><br>MARTIN BENCHER USA, LLC and MARTIN BENCHER (SCANINANVIA) A/S,<br><br>    Cross-Defendants. | |

1

MARY KAY VYSKOCIL, United States District Judge:

Gulf Island Shipyards, LLC ("Gulf Island") brings this maritime action against Martin Bencher (Scandinavia) A/S, Martin Bencher USA, LLC (together, "Martin Bencher"),[1] and MSC Mediterranean Shipping Company S.A. ("MSC")[2] for damage to a propeller shaft owned by Gulf Island incurred while the propeller shaft was being discharged from one of MSC's cargo ships. Pending now is Martin Bencher's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim and, in the alternative, pursuant to Rule 12(b)(3) for improper venue. Also pending is MSC's motion for partial summary judgment on the issue of whether any damages available to Gulf Island are limited to $500 per package by the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 (2006).

## BACKGROUND[3]

Gulf Island is in the business of repairing, constructing, and maintaining marine vessels for private companies and for the United States government. AC ¶ 7. In November 2020, Gulf Island agreed to purchase a propeller shaft from Wärtsilä Defense, Inc. ("Wärtsilä"), which was to be used in connection with a construction project for the U.S. Navy. AC ¶ 8. Pursuant to this

---

[1] The term "Martin Bencher" in this Opinion refers to Martin Bencher (Scandinavia) A/S and/or Martin Bencher USA, LLC, which is reflective not only of the fact that those two entities jointly moved to dismiss the action, but also of the way in which the allegations are presented in the Amended Complaint.

[2] MSC Mediterranean Shipping Company S.A. was erroneously sued as Mediterranean Shipping Company (USA), Inc., as agent for Mediterranean Shipping Co. S.A., Geneva.

[3] The following facts are drawn from the allegations in the Amended Complaint [ECF No. 29] ("AC"), which are presumed true for the purposes of the pending motion to dismiss, as well as from documents that are incorporated by reference in and integral to the Amended Complaint. While extrinsic documents which are neither incorporated by reference nor integral to the Amended Complaint may be considered in connection with the pending motion for partial summary judgment, no such documents are relevant to that motion.

agreement, the propeller shaft and other cargo would be shipped from Italy to the United States. AC ¶¶ 9, 14. Wärtsilä was contractually obligated to obtain insurance for the cargo. AC ¶ 14.

Wärtsilä contracted with Martin Bencher to arrange for the shipping of the cargo. AC ¶ 10. Martin Bencher issued a Combined Transport Bill of Lading for the shipment, which identified Wärtsilä as the shipper and Gulf Island as the consignee. ECF No. 74 ("Bencher Br."), Ex. A. Martin Bencher then contracted with MSC, a vessel operating common carrier, to carry the cargo from Italy to the United States. AC ¶ 10. MSC issued a Sea Waybill (the "MSC Waybill") for the shipment, identifying Martin Bencher (Scandinavia) A/C as shipper and Martin Bencher USA, LLC as consignee. Bencher Br., Ex. B.[4]

The vessel carrying the cargo arrived in the United States on February 3, 2021. AC ¶ 16. The propeller shaft was being discharged from the vessel that night when it was dropped and seriously damaged. AC ¶ 16. Upon inspection, Gulf Island determined that the propeller shaft could not be repaired and must be replaced. AC ¶ 17.

## PROCEDURAL HISTORY

Gulf Island initiated this action by filing a complaint against MSC on August 16, 2021. [ECF No. 1] ("Compl.").[5] Gulf Island claimed that MSC was negligent in the care and delivery of cargo in violation of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701,[6]

---

[4] The precise terms of the MSC Waybill are not entirely clear, as the version filed in connection with the motion to dismiss differs from the version that MSC initially filed with its motion for partial summary judgment. *Compare* Bencher Br., Ex. B, *with* ECF No. 71-2. (The version filed in connection with the motion to dismiss appears to be the same as the version that MSC filed in connection with its reply brief; however, as discussed below, *see infra* at 13, MSC provided no explanation for the differing versions.)

[5] The case was initially brought in the Eastern District of Louisiana. [ECF No. 1]. However, MSC made a motion to transfer the venue to this District pursuant to the forum selection clause in the MSC Waybill. [ECF No. 8]. After the motion was granted on February 3, 2022 [ECF No. 16], the case was transferred to the Southern District of New York, where it was assigned a new case number (22-cv-01018).

[6] "In 2006, Congress recodified Title 46 of the U.S. Code, and COGSA was uncodified but reprinted at 46 U.S.C. § 30701, historical and statutory notes." *Caddell Constr. Co. (DE), LLC v. Danmar Liens Ltd.*, 2018 WL 6726549,

3

Compl. ¶ 17, or "[i]n the alternative," in violation of the Harter Act, 46 U.S.C. § 30701, "should this Court hold that COGSA does not apply to cargo damaged during discharge from the Vessel." Compl. ¶ 22. Gulf Island also claimed, "[s]trictly in the alternative," that "should this Court hold that neither COGSA nor the Harter Act applies, Gulf Island also brings a cause of action for negligence." Compl. ¶ 24.

On March 22, 2022, Gulf Island filed its Amended Complaint [ECF No. 29] ("AC"), which added the Martin Bencher entities as defendants. The Amended Complaint also added a breach of contract claim, contending "on information and belief," that Martin Bencher was required to procure insurance for the cargo pursuant to its agreement with Wärtsilä, to which Gulf Island was a third-party beneficiary, but that Martin Bencher failed to do so. AC ¶¶ 35-37.

MSC answered the Amended Complaint. [ECF No. 31] ("Answer"). In so doing, MSC filed a counterclaim against Gulf Island and a crossclaim against Martin Bencher, alleging that after MSC delivered the cargo and the container carrying it to the port in the United States, Gulf Island and Martin Bencher breached the conditions of the MSC Waybill by failing to collect the cargo or return the container, forcing MSC to incur thousands in storage costs and thousands more in damages related to the unreturned container.

Martin Bencher answered the crossclaims [ECF Nos. 48, 65], and moved to dismiss the Amended Complaint [ECF No. 73].[7] In support of its motion to dismiss, Martin Bencher argued that the Amended Complaint must be dismissed for failure to state a claim upon which relief can

---

at *2 n.1 (S.D.N.Y. Dec. 20, 2018) (citing Pub. L. No. 109-301; 120 Stat. 1485 (2006)). For simplicity's sake, all further citations to COGSA in this Opinion will therefore be in the format COGSA § __."

[7] The motion to dismiss was accompanied by a Memorandum of Law in Support of the Motion to Dismiss [ECF No. 74] ("Bencher Br."), which attached the following documents: the Combined Transport Bill of Lading [ECF No. 74-1], the MSC Waybill [ECF No. 74-2], the Wärtsilä Invoice [ECF No. 74-3], and the Martin Bencher Invoice [ECF No. 74-4]. There is no dispute between the parties that these documents may be considered by this Court as being either incorporated by reference in or integral to the Amended Complaint. The Court, however, has its doubts with respect to the latter two documents—*i.e.*, the invoices. *See infra* at 12 n.15.

be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Martin Bencher argued that the negligence-based claims (Counts I-III) are time-barred by the one-year statute of limitations set by COGSA, and that the breach of contract claim (Count IV) fails because Martin Bencher never had an obligation to insure the cargo. In the alternative, "and only if the court declines to dismiss the claims under Rule 12(b)(6)," Martin Bencher argued that the suit must be dismissed under Rule 12(b)(3) because the Combined Transport Bill of Lading provides that Denmark is the proper venue. Bencher Br. at 16. Gulf Island opposed the motion [ECF No. 80] ("MTD Opp."),[8] and Martin Bencher replied [ECF No. 82] ("Bencher Reply").

Meanwhile, MSC moved for partial summary judgment against Gulf Island. [ECF No. 69]. Specifically, MSC sought an order limiting its potentially liability to $1,500, pursuant to the provision in COGSA which provides a default cap on damages of $500 per package. Gulf Island filed an opposition [ECF No. 75] ("SJ Opp."), and MSC replied [ECF No. 83] ("MSC Reply").[9]

## LEGAL STANDARDS

### I. MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the

---

[8] An opposition brief was also filed by MSC, which responded solely to Martin Bencher's alternative argument that the Amended Complaint should be dismissed for improper venue. [ECF No. 78]. While this unsolicited opposition is unusual, the Court need not consider the propriety of this filing because the venue issue is not ultimately decided.

[9] The motion for partial summary judgment was accompanied by the following documents: a Memorandum of Law in Support of the Motion for Partial Summary Judgment [ECF No. 70] ("MSC Br."); the Declaration of Nicholas Hargreaves and attached exhibits [ECF No. 71] ("Hargreaves Decl."), and a Local Rule 56.1 Statement [ECF No. 72] ("MSC Facts"). Gulf Island's opposition was accompanied by the Declaration of Etienne Balart and attached exhibits [ECF No. 76] ("Balart Decl."), and a Counter Local Rule 56.1 Statement [ECF No. 77]. MSC's reply was filed along with the Declaration of James A. Marrisen [ECF No. 84] ("Marrisen Decl."), which attached a version of the MSC Waybill [ECF No. 84-1].

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When determining the sufficiency of a claim under Rule 12(b)(6), the Court is normally required to consider only the allegations on the face of the pleading. However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## II.     MOTION FOR SUMMARY JUDGMENT

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "may not make credibility determinations or weigh the evidence." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). The court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.* If there is evidence in the record that supports a reasonable inference in favor of the opposing party, summary judgment is improper. *See Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 64 (2d Cir. 2021).

## DISCUSSION

### I.     MOTION TO DISMISS

Gulf Island has pled two categories of causes of action in this case. First, Gulf Island brought negligence-based claims which span three causes of action: one for violation of COGSA, one for violation of the Harter Act, and one for common law negligence. These causes of action are all brought in the alternative to one another and, as a result, will be considered in conjunction. Second, Gulf Island brought a cause of action for breach of contract. For the

reasons that follow, the Court finds that each cause of action pled by Gulf Island fails to state a claim.[10]

### A. Negligence-Based Claims

The threshold question in this case is whether the parties' rights and obligations are governed by either COGSA or the Harter Act or by common law. The Harter Act, enacted in 1893, applies to the carriage of goods to or from any port in the United States. 46 U.S.C. § 30702. COGSA, enacted in 1936, superseded the Harter Act with respect to "the period from the time when the goods are loaded on [to a ship] to the time when they are discharged from the ship," COGSA § 30701(1)(e), the so-called "tackle-to-tackle" period.[11] The Harter Act thus governs where COGSA does not—that is, during the period "prior to loading and after discharge of cargo until proper delivery is made." *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir. 1985). Thus, which law governs turns on the timing of the alleged damage to the propeller shaft.

Gulf Island argues that it is too early to determine the governing law, as "there is a disputed issue of fact as to when and how this cargo was damaged." Gulf Opp. at 9-10. The Court disagrees. At the motion to dismiss stage, the Court must accept as true the facts alleged

---

[10] Because the Court dismisses the Amended Complaint on the merits, it declines to consider whether venue is proper. *See In re SSA Bonds Antitrust Litig.*, No. 16-cv-3711, 2018 WL 4118979, at *4 (S.D.N.Y. Aug. 28, 2018) ("Because Plaintiffs fail to state a claim, . . . the Court declines to address personal jurisdiction and venue."); *cf. Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 (2d Cir. 2012) (explaining that the Court need not always decide personal jurisdiction if the case can be dismissed entirely on the merits).

[11] While the tackle-to-tackle period is the only time during which COGSA applies by its own force, it is "well settled that parties may extend the application of any provision of the statute beyond this period by contract." *Fireman's Fund Ins. Co. v. AMC USA, Inc.*, No. 11-cv-7862, 2012 WL 3283440, at *3 (S.D.N.Y. Aug. 13, 2012). Martin Bencher contends that both the MSC Waybill and the Combined Transport Bill of Lading expressly incorporate COGSA as the governing law while the cargo remained in the custody of the carrier. *See* Bencher Br., Ex. A ¶ 8.3; Bencher Br., Ex. B ¶ 6. Gulf Island disputes, however, that it ever received the pages of these documents that contain the relevant language. The Court need not resolve this issue because the Amended Complaint alleges that the cargo was damaged *during*—not after—discharge. As a result, COGSA need not be extended by contract in order to apply.

in the complaint. Here, the allegations regarding timing are clear: the damage occurred on February 3, 2021, "*while . . . agents of MSC were discharging* the propeller shaft from the Vessel." AC ¶ 16 (emphasis added). As a result, Gulf Island asserted in the Amended Complaint that the Court should apply the Harter Act *only if* it holds "that COGSA does not apply to cargo damaged during discharge from the Vessel." AC ¶ 29. But COGSA, by its express terms, applies to cargo damaged during discharge. It is only *after* discharge that the Harter Act kicks in. A plain reading of Gulf Island's own pleadings thus makes clear that COGSA (rather than the Harter Act) governs this case. Importantly, COGSA also preempts the state common law claim brought by Gulf Island, "to the extent that [it] allow[s] for a longer limitations period or a greater recovery than COGSA permits." *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 160 (S.D.N.Y. 2020).[12]

COGSA (unlike the Harter Act) has a one-year statute of limitations. Section 1303(6) of COGSA provides that "[t]he carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 1303(6). Whether a claim is barred by this statute-of-limitations provision is "[o]rdinarily . . . an affirmative defense that must be raised in the answer," but the law is clear that "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

In the Amended Complaint, Gulf Island alleges that the propeller shaft was damaged when it was delivered to the United States on February 3, 2021.[13] AC ¶ 16. But Gulf Island did

---

[12] To the extent that discovery has revealed an inaccuracy in the Amended Complaint, Gulf Island is free to seek leave to amend the Amended Complaint.

[13] In its opposition brief, Gulf Island contends that "delivery" does not occur for statute of limitations purposes until there has been "a reasonable opportunity for the inspection or removal of the goods," which, according to Gulf

8

not name the Martin Bencher entities as defendants until the Amended Complaint was filed on March 22, 2022—over one year later. The COGSA claim asserted against Martin Bencher is therefore untimely unless the Amended Complaint relates back to the date of the original complaint. For this to happen, it must be the case that Martin Bencher, among other things, "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Because Gulf Island does not even attempt to argue that such a mistake occurred here, the Amended Complaint cannot relate back to the date of the original complaint. *See Smith v. City of New York*, No. 18-cv-33, 2020 WL 1689752, at *2 n.3 (S.D.N.Y. Apr. 6, 2020) ("It is the plaintiff's burden to establish that an amended claim relates back to the date of the original complaint.").

Gulf Island's negligence-based claims are thus barred by the statute of limitations in COGSA, unless Martin Bencher is estopped from asserting that defense. Courts in this District have recognized that a carrier can be equitably estopped from asserting the statute of limitations as a defense under certain circumstances. Specifically, equitable estoppel has been found to apply "where a plaintiff can show that he was misled by the defendants into reasonably and justifiably believing that the statute of limitations would not be used as defense." *United Perfume Inc. v. Evergreen Marine Corp. (Taiwan)*, No. 15-cv-9296, 2017 WL 5015779, at *9 (S.D.N.Y. Aug. 7, 2017) (internal quotation marks omitted).

The Amended Complaint does not allege grounds for applying equitable estoppel here. Gulf Island argues for the first time in its opposition brief, however, that Martin Bencher is

---

Island, did not occur in this case until March 11, 2021. *See* MTD Opp. at 6 (quoting *Universal Ruma Co. v. Mediterranean Shopping Co. S.A.*, No. 99-cv-10880, 2000 WL 991393, at *3 (S.D.N.Y. July 19, 2000)). But Gulf Island alleged nothing in the Amended Complaint relating to when it first had the opportunity to inspect the cargo; and the Second Circuit has not yet adopted the interpretation of "delivery" that Gulf Island now offers. The Court need not resolve these issues, however, because, as Gulf Island concedes, the statute of limitations ran out before the filing of the Amended Complaint, even assuming the clock did not start to run until March 11, 2021.

9

equitably estopped from asserting the statute of limitations because "[o]n March 9, 2021, Martin Bencher noted that Martin Bencher would 'lodge [a claim] with [its] marine insurance carrier so that they can send out a surveyor as well' and that it would 'then submit a claim to MSC.'"[14] MTD Opp. at 9 (quoting MTD Opp., Ex. A).  According to Gulf Island, Martin Bencher clearly communicated through this message that it would be pursuing the damage claim on behalf of Gulf Island.

Even assuming the Court can consider such extrinsic evidence at this stage, which is itself dubious, such evidence does not salvage Gulf Island's claim.  The proffered evidence does not establish that Martin Bencher misled Gulf Island into thinking that it would not invoke the statute of limitations or that the statute of limitations would be extended.  Moreover, even if the evidence did establish that Gulf Island had been temporarily misled in such a way, there is no indication that the deception continued until the date when the statute of limitations expired.  Accordingly, because Gulf Island did not file this suit within the limitations period provided by COGSA and because Martin Bencher is not estopped from asserting a statute of limitations defense, Gulf Island's COGSA claim is dismissed without prejudice.

### B. *Breach of Contract*

A claim for breach of a maritime contract is treated much like a claim for breach of any other contract.  To succeed on such a claim, "a plaintiff must plead sufficient facts to establish:

---

[14] Gulf Island refers to its request as one for "equitable tolling."  MTD Opp. at 8.  However, the question "is not whether the running of the statute was tolled by defendant's action but rather whether, as a matter of equity, defendant is estopped from asserting the time bar in defense to this action." *Austin, Nichols & Co. v. Cunard S.S. Ltd.*, 367 F. Supp. 947, 948 (S.D.N.Y. 1973); *see also Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) ("Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his suit.").  Relatedly, to the extent that Gulf Island suggests that the Court should toll the statute of limitations because the case was transferred from the Eastern District of Louisiana and because counsel for Gulf Island had to be admitted *pro hac vice* into this Court before filing its Amended Complaint, the Court finds those arguments unpersuasive.

(1) the terms of the maritime contract; (2) that the contract was breached; and (3) the reasonable value of purported damages." *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 375 (S.D.N.Y. 2015). Gulf Island falters at the first step.

Gulf Island alleged that Martin Bencher was required to procure insurance for the propeller shaft pursuant to its agreement with Wärtsilä, to which Gulf Island was a third-party beneficiary. AC ¶¶ 35-37. According to Gulf Island, the breach of contract occurred when Martin Bencher failed to obtain the requisite insurance. However, Gulf Island fails to identify any specific contract that contains such a requirement. Instead, Gulf Island merely prefaces its vague and conclusory allegation with the phrase "on information and belief." AC ¶ 35.

But pleading on information and belief is appropriate only in certain circumstances. It can generally be done only where "[1] the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Gulf Island does not even attempt to explain which of these two factors justify its use of this prefatory phrase. And despite the numerous agreements filed in connection with this motion, the Court still is unable to identify which (if any) of those agreements Gulf Island intended to reference with respect to this breach of contract allegation.

Based on the briefing, it appears that Gulf Island might have meant to reference the Combined Transport Bill of Lading. But this assumption does not change the analysis. Gulf Island fails to identify any provision in that agreement, attached to the motion to dismiss, which requires Martin Bencher to procure insurance for the cargo.[15] Still, Gulf Island contends without

---

[15] Martin Bencher contends that various invoices demonstrate that it had no duty to procure insurance. Bencher Br., Exs. C and D. Those invoices, however, do not appear to be integral to the complaint or incorporated by reference. In any event, the Court need not decide whether it is proper to consider those documents, as the breach of contract claim clearly fails even assuming the invoices cannot be considered.

support that there is a disputed issue of fact on this score and that, at this stage, the Court must accept its well-pleaded allegations as true. But there are no well-pleaded allegations on this issue. Gulf Island's allegations are entirely conclusory, unsupported by any facts, and belied by the one document that might prove relevant. "More is required, even on a motion to dismiss." *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 284 n.9 (S.D.N.Y. 2003).

II.     MOTION FOR SUMMARY JUDGMENT

Under COGSA, "[n]either the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package." COGSA § 4(5). This per package limit does not apply, however, "if the shipper does not have a fair opportunity to declare higher value and pay an excess charge for additional protection." *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 101 (2d Cir. 1999). In its motion for partial summary judgment, MSC seeks to limit any potential liability to $1,500 on the ground that the cargo at issue, damaged propeller shafts, was identified as three packages in the MSC Waybill, subject to a $500 limitation per package.

In response, Gulf Island invokes the "fair opportunity" doctrine. Specifically, Gulf Island contends that the per package limit does not apply because it had no opportunity to declare a higher value for the packages prior to shipping. To that end, Gulf Island argues that the MSC Waybill failed to "explicitly incorporate COGSA's provisions or refer in some way to the $500 per package limitation," which would have "constitute[d] prima facie evidence of fair opportunity." *Royal Ins. Co. v. M.V. ACX Ruby*, No. 97-cv-3710, 1998 WL 524899, at *3 (S.D.N.Y. Aug. 21, 1998). In support of this claim, Gulf Island points to the two page MSC Waybill that MSC filed along with its motion for summary judgment, which contains none of the relevant disclosures. Balart Decl., Ex. B.

12

In its reply brief, MSC directs the Court to Clause 7.3 of the MSC Waybill, which provides as follows:

> The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods. Higher compensation than that provided for in this Sea Waybill may be claimed only when, with the written confirmation of the Carrier, the value of the Goods, declared by the Shipper upon delivery to the Carrier has been stated by the Carrier in the box marked Declared Value on the front of this Sea Waybill and ad valorem charges paid. In that case, the amount of the Declared Value shall be substituted for the limits provided in this Sea Waybill. Any partial loss or damage shall be adjusted pro rata on the basis of such Declared Value.

This clause, on its face, appears fatal to Gulf Island's position. But there is a problem. The clause is nowhere to be found in the MSC Waybill that MSC filed with its motion for partial summary judgment. Rather, the clause appears only on the third and final page of the MSC Waybill that MSC filed *with its reply brief*.[16] Marissen Decl., Ex. A. Not only was this third page not included in the version MSC initially filed, but the MSC Waybill relied upon in reply appears to differ in various other ways from the version initially filed. *Compare* ECF No 71-2, *with* ECF No. 84-1. There has been no explanation as to what accounts for these differences, leaving the Court, at this stage, entirely unable to determine what shipping documents were provided to what parties and when.[17]

---

[16] To be sure, the relevant clause was also included in the online terms and conditions of the MSC Waybill, which was attached as Exhibit C to the Hargreaves Declaration (filed with the initial motion for summary judgment). [ECF No. 71-3]. Gulf Island presents various arguments in its opposition for why the online terms and conditions failed to satisfy the fair opportunity doctrine. *See* SJ Opp. at 2-5. However, MSC did not respond to these arguments in its reply (opting instead to present the new version of the MSC Waybill), and thereby effectively conceded that the online terms did not satisfy the fair opportunity doctrine. *See In re UBS AG Secs. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments made by its opponent that it fails to address).

[17] This problem also precludes the Court from determining whether the MSC Waybill (as MSC contends) contained a clause which extended the application of COGSA throughout the entire time the goods remained in the custody of the carrier. Such a clause might prove decisive in a separate dispute between the parties, pertaining to the threshold issue of whether the claims are governed by COGSA or by the Harter Act. (Such a dispute may have different considerations at the summary judgment stage than at the motion to dismiss stage. *See supra* at 7-8.)

Because there is a genuine dispute of material fact regarding the contents of the relevant MSC Waybill, MSC's motion for partial summary judgment is denied.

## **CONCLUSION**

As set forth herein, the motion to dismiss filed by Martin Bencher is granted without prejudice, and the motion for partial summary judgment filed by MSC is denied.

The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 69 and 73.

**SO ORDERED.**

**Date: March 29, 2023**
**New York, NY**

                                              **MARY KAY VYSKOCIL**
                                              **United States District Judge**